**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOAN HARRIS | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-12-0829 |
| | : | |
| | : | |
| JOHN LEOPOLD, et al. | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM**

Now pending before the court is a motion to dismiss filed by John R. Leopold and Anne

Arundel County, Maryland (the "defendants") against plaintiff Joan Harris ("Ms. Harris"). Ms.

Harris alleges hostile work environment (Count I) and retaliation (Count II) under Title VII of

the Civil Rights Act of 1964 ("Title VII"). She also alleges that defendants deprived her of her

First Amendment free speech rights in violation of 42 U.S.C. § 1983 (Count III) and terminated

her in retaliation as an act of intimidation in violation of 42 U.S.C. § 1985 (Count IV). The issues

in this case have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the

reasons stated below, the defendants' motion will be granted as Counts I, III, and IV and denied

as to Count II.

**BACKGROUND**

As this is a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the following facts are

presented in the light most favorable to the plaintiff. Joan Harris began working for Anne

Arundel County in December 2006. (ECF No. 1, Compl., ¶ 11.) She left her position briefly from

October 2007 to January 2008 but returned to her role as a constituent services specialist shortly

thereafter. (*Id.*) As a constituent services specialist, Ms. Harris worked closely with John

1

Leopold ("Mr. Leopold"), the County Executive of Anne Arundel County. During her tenure in the county executive's office, the support staff for the office consisted entirely of female employees. (*Id.* at ¶ 14.) These employees worked for Mr. Leopold, Dennis Callahan ("Mr. Callahan"), and Erik Robey ("Mr. Robey"). (*Id.*) According to Ms. Harris, Mr. Leopold and Mr. Callahan routinely spoke in a loud voice only inches away from female employees' faces to emphasize their displeasure. (*Id.* at ¶ 15.) Both men rarely opened doors for themselves and instead waited for women walking behind them to open doors for them. (*Id.*) Ms. Harris claims that female employees were expected to walk behind Mr. Leopold, Mr. Robey, and Mr. Callahan rather than alongside them and to wear their hair in ways that were pleasing to Mr. Leopold, but Ms. Harris does not specify the source of those expectations. (*Id.* at ¶¶ 15, 16.)

Ms. Harris states that Mr. Leopold spent significant time "hovering" around a receptionist and commenting that he found her very attractive. (*Id.* at ¶ 16.) Mr. Leopold also commented frequently on the attire of female employees but never on that of male employees. (*Id.*)

According to Ms. Harris, Mr. Leopold talked loudly about or described women in degrading terms to employees including Ms. Harris. (*Id.* at ¶ 17.) He regularly reassigned women to other county offices when he was displeased with them for any reason, and would lose his temper with female employees "over trivial matters." (*Id.*) Mr. Leopold became angry when Ms. Harris garnered attention in the media instead of him. (*Id.*) After fall 2007, Mr. Leopold excluded the female members of the executive staff from weekly strategy meetings, even though all staff participated in those meetings previously. (*Id.*)

Ms. Harris maintains that she and other staff members were "forced" to participate in Mr. Leopold's 2010 reelection campaign. (*Id.* at ¶ 20.) Ms. Harris participated in staff meetings in which campaign discussions took place, and she was required to do campaign work during the

workday. (*Id.*) Ms. Harris was also instructed to place a sign in support of Mr. Leopold on her friend's lawn.  (*Id.*) Ms. Harris felt pressure to contribute to the campaign because all employees were expected to contribute $50. (*Id.*) When she did not contribute $100 toward Mr. Leopold's campaign effort, Mr. Robey confronted her regarding her level of support. (*Id.* at ¶ 21.)

On August 24, 2010, Karla Hamner, a former employee of the county executive's office, filed a gender discrimination suit against Mr. Leopold in Anne Arundel County Circuit Court.[1] Shortly afterward, Mr. Robey summoned Ms. Harris and other female employees to a meeting in which they were "instructed on how to show support for Mr. Leopold and to publicly disagree with the allegations in Hamner's complaint." (*Id.* at ¶ 22.) Instead, Ms. Harris provided information to Ms. Hamner's counsel in support of her suit.[2] (*Id.* at ¶ 22.)

After the first amended complaint in the Hamner case was filed on September 30, 2010, Mr. Leopold, Mr. Callahan, and Mr. Robey gave Ms. Harris fewer and fewer assignments. (*Id.* at ¶ 23.) Ms. Harris was excluded from certain staff meetings, and was ignored by Mr. Leopold at community events, including those she had planned or in which she played a significant role. (*Id.* at ¶ 23-25.)

On November 3, 2010, the day after Mr. Leopold was reelected as County Executive for Anne Arundel County, Ms. Harris was terminated. (*Id.* at ¶ 13.) Ms. Harris subsequently filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging hostile work environment and retaliatory discharge in violation of Title VII. (*Id.* at ¶ 6.) Ms. Harris received a "Right to Sue" notice on March 16, 2011.  On May 13, 2011, Ms. Hamner filed a motion for leave to file an amended complaint in her discrimination suit that proposed adding Ms. Harris as a co-plaintiff. (*Id.* at ¶ 9.) The court rejected that motion on February 15, 2012.  On March 16,

---

[1] Hamner's case was removed to this court on September 9, 2010.
[2] The affidavit Ms. Harris submitted in Ms. Hamner's case was filed with the court on November 19, 2010, after Ms. Harris was terminated.

2012, Ms. Harris filed a complaint in this court. Ms. Harris alleges that she suffered gender

discrimination amounting to a hostile work environment and that she was retaliated against for

providing information in support of Ms. Hamner's discrimination suit. Ms. Harris also alleges

that the defendants deprived her of her First Amendment free speech rights in violation of 42

U.S.C. § 1983 and terminated her in retaliation as an act of intimidation in violation of 42 U.S.C.

§ 1985. On April 13, 2012, the defendants filed a motion to dismiss all four counts in Ms.

Harris's complaint. The defendants subsequently filed a motion to strike an affidavit by county

executive office employee Carla Sagerholm that Ms. Harris filed on September 6, 2012.

## ANALYSIS

**Motion to Dismiss Standard**

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being

made against him, they also provide criteria for defining issues for trial and for early disposition

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not

sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a

motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief

above the speculative level . . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast'

evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege

sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation

omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to

relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from

conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**Title VII Claims**

Ms. Harris asserts both hostile work environment and retaliation claims under Title VII.

The defendants argue that Ms. Harris's claims are time-barred because they were not filed within

90 days of delivery of the right to sue notice, as required under 42 U.S.C. § 2000e-5(f)(1). The

EEOC issued its right to sue notice on March 16, 2011, but Ms. Harris did not file her complaint

in this case until a year later, on March 16, 2012. She did, however, attempt to bring these claims

in the form of a motion for leave to amend Ms. Hamner's discrimination complaint in order to

add Ms. Harris as a co-plaintiff. Ms. Hamner filed the motion for leave to amend on May 13,

2011 – within the 90-day requirement. The court rejected the motion on February 15, 2012, and

Ms. Harris filed a separate complaint within 30 days thereafter. Assuming the time the motion to

amend was pending tolls the 90-day requirement, Ms. Harris filed her complaint within the

statutory limit.

*Hostile Work Environment*

Ms. Harris alleges she was subjected to a hostile work environment based on sex. "In

order to make out a hostile work environment claim based on sex, 'a plaintiff must show that the

offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or

pervasive to alter the conditions of her employment and create an abusive working environment,

and (4) was imputable to her employer.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir.

2011) (internal citations omitted).

The third factor is dispositive here: whether the conduct of which Ms. Harris complains

was sufficiently severe or pervasive to alter her conditions of employment and create an abusive

working environment. In determining whether conduct is sufficiently severe or pervasive, courts

look to the "totality of the circumstances," including 1) the frequency of the discriminatory

conduct, 2) the severity of the conduct, 3) whether the conduct was physically threatening,

humiliating, or a mere offensive utterance, and 4) whether it unreasonably interferes with an

employee's work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88

(1998). The plaintiff must show both that she "subjectively perceived the environment to be

abusive" and that "the conduct was such that a reasonable person in the plaintiff's position would

have found the environment objectively hostile or abusive." *Equal Employment Opportunity

Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks and

citations omitted).

The Fourth Circuit has noted that "plaintiffs must clear a high bar in order to satisfy the

severe or pervasive test." *Id.* For instance, "complaints premised on nothing more than rude

treatment by [coworkers] . . . callous behavior by [one's] superiors . . . or a routine difference of

opinion and personality conflict with [one's] supervisor" are not actionable. *Id.* (internal

quotation marks and citations omitted).

Turning to the instant case, Ms. Harris's complaint provides somewhat vague examples

of rude and inappropriate behavior by Mr. Leopold toward her and other female employees.

Among the incidents Ms. Harris alleges are several gender-neutral instances of Ms. Harris and

other employees being forced to participate in campaign activities. Other incidents, such as Mr.

Leopold and other supervisors waiting for female employees to open doors for them or making comments about female employees' attire, while arguably sexist, are not sufficiently serious to support a claim of hostile work environment. Perhaps the most substantial allegations Ms. Harris makes in support of her hostile work environment claim involve Mr. Leopold describing women in degrading terms, yet Ms. Harris fails to provide specific examples of such incidents or to indicate the frequency with which they occurred.

Taken as a whole, the conduct of which Ms. Harris complains, though inappropriate, appears to be more comparable to the kind of rude behavior and offhand comments that courts have held are not sufficiently severe or pervasive to constitute actionable sexual harassment. *See, e.g.*, *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (holding that comments about a woman's looks and comments demeaning to women were not sufficiently severe or pervasive). *Cf. Hoyle*, 650 F.3d at 334, 327 (holding that evidence of sexually suggestive calendars in the company cafeteria and break room and a nude picture of a woman as the screensaver on a company computer was sufficient to generate a genuine dispute of material fact as to whether a work environment was severe or pervasive). While a work environment filled with ridicule, intimidation, and remarks that maliciously demean the status of women can be hostile and abusive, even where a woman is not explicitly subject to sexual advances or propositions, *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000), Ms. Harris has failed to plead facts that establish this level of hostility. Thus, even accepting, as it must, all of Ms. Harris's allegations as true, the court cannot conclude that the incidents alleged are sufficiently "severe or pervasive" to state a plausible claim of hostile work environment under Fourth Circuit law.[3]

---

[3] Unlike the plaintiff in *Hamner v. Anne Arundel County*, Civil No. 10-2485, Harris alleges neither a physical assault nor an involuntary transfer leading to firing as part of an ongoing gender-based harassment.

*Retaliation*

Ms. Harris also alleges that she was terminated in retaliation for providing information in support of Ms. Hamner's discrimination lawsuit against Mr. Leopold. Title VII's anti-retaliation provision forbids discrimination against employees who have opposed any practice made unlawful by Title VII or who have "made a charge, testified, assisted, or participated" in a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) the protected activity and the adverse action were causally connected. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998).

It is clear that, by providing assistance in Ms. Hamner's Title VII suit, Ms. Harris engaged in a protected activity. *See Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). It is also clear that the defendants acted adversely against her by terminating her employment. Thus, the court must determine whether Ms. Harris has pled facts sufficient to show that a causal connection existed between Ms. Harris's actions and her termination.

To prove a causal connection, a plaintiff must show that the defendants fired her "because [she] engaged in a protected activity." *Dowe*, 145 F.3d at 657. The Fourth Circuit has stated that "very little evidence of a causal connection is required to establish a *prima facie* case." *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir. 1998) (overruled on other grounds). A plaintiff may demonstrate a causal connection by showing that the adverse action bears sufficient temporal proximity to the protected activity. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *accord Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).

Ms. Harris has pled facts sufficient to show that the defendants fired her because they believed, correctly, that she assisted with Ms. Hamner's discrimination suit against Mr. Leopold. On September 30, 2010, shortly after Ms. Harris provided Ms. Hamner's counsel with information in support of Ms. Hamner's suit, Ms. Hamner filed an amended complaint against Mr. Leopold. After the amended complaint was filed, Mr. Leopold, Mr. Callahan, and Mr. Robey gave Ms. Harris fewer and fewer assignments, excluded her from meetings, and ignored her at public events. On November 3, 2010, the day after Mr. Leopold was reelected and a mere four weeks after the filing of Ms. Hamner's amended complaint, Ms. Harris was fired. Given all the circumstances, including the proximity of Ms. Harris's termination to her protected activity, Ms. Harris's complaint sets forth a plausible claim of retaliation even though her support for Ms. Hamner did not become public until the affidavit was filed November 19, 2010. Accordingly, the defendants' motion to dismiss Ms. Harris's retaliation claim will be denied.

**Section 1983 Claim**

Ms. Harris alleges that the defendants deprived her of her constitutional right of free speech in violation of 42 U.S.C. § 1983 by terminating her "with malice" in order to "silence" her regarding treatment of female employees in the county executive's office. Ms. Harris also claims that Mr. Leopold displaces or terminates women who express dissatisfaction with conditions of their employment, and "who may be likely to speak out" against the Mr. Leopold Administration, in an effort to "chill" the speech of public employees regarding matters of public concern. Thus, Ms. Harris appears to submit a "chilling claim" that the defendants terminated her in order to deter future speech.

Under Fourth Circuit precedent, "'a public employer is prohibited from threatening to discharge a public employee in an effort to chill that employee's rights under the First

Amendment.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 319 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 246 (4th Cir. 1999)). "A chilling claim is essentially the derivative of a retaliation claim: if a public employer cannot fire, demote, or similarly punish a public employee for engaging in protected speech, the employer also cannot intimidate the employee into silence by threatening impermissible retribution." *Id.*

In *Ridpath*, the defendants, members of the Board Governors at a public university, explicitly warned Ridpath that if he commented publicly on an NCAA investigation he would face professional and personal repercussions. *Id.* at 319. The Fourth Circuit utilized a *McVey*-type analysis to determine whether the speech at issue in Ridpath's chilling claim was entitled to First Amendment protection. *Id. See McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998) (outlining a three-part test for proving that a retaliatory employment action violated a public employee's free speech rights). The court concluded that the defendants, through their statements to Ridpath, sought to use their positions as Administrators to "intimidate Ridpath into silence." *Id.* at 320.

The allegations in the present case differ from those in *Ridpath* in an important respect: Ms. Harris points to no specific statements by the defendants that might constitute a threat of termination if Ms. Harris commented publicly about the treatment of women in the county executive's office. Ms. Harris merely states that after Hamner filed the gender discrimination suit, Mr. Robey summoned Ms. Harris and other female employees to a meeting "to instruct the women how they could show their support for Mr. Leopold and how they should publicly disagree with allegations contained in Hamner's complaint." (ECF No. 1, Compl., ¶ 22.) Because Ms. Harris fails to allege facts sufficient to support a cause of action under section 1983, the defendants' motion to dismiss will be granted on this claim.

**Section 1985 Claim**

Ms. Harris also alleges "termination in retaliation as an act of intimidation" in violation of 42 U.S.C. § 1985. Although Ms. Harris does not specify a subsection of section 1985 in her complaint, she appears to be seeking relief under section 1985(3), which prohibits conspiracy to deprive persons of their civil rights. As in her Title VII claim, Ms. Harris alleges that she was terminated for providing evidence in support of Ms. Hamner's discrimination suit against Mr. Leopold. To the extent Count IV is premised upon an alleged conspiracy to violate Ms. Harris's Title VII rights, however, her claim is foreclosed by the Supreme Court's decision in *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 378 (1979), which held that deprivation of a right created by Title VII may not be the basis for a cause of action under 42 U.S.C. § 1985(3). Accordingly, Ms. Harris's section 1985 claim must be dismissed.

**Motion to Strike**

On September 14, 2010, the defendants filed a motion to strike the affidavit of Carla Sagerholm. Citing Federal Rule of Civil Procedure 12(f), the defendants claim that Ms. Sagerholm's affidavit is immaterial, impertinent, and scandalous. Ms. Harris had filed Ms. Sagerholm's affidavit in this case but as an attachment to a reply to the defendants' opposition to a motion to compel in the Hamner case.

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In paragraph 21 of her affidavit, Ms. Sagerholm, an employee in the county executive's office, claims to have overheard Erik Robey say that Joan Harris would be terminated for providing information to Ms. Hamner's attorney. Although Ms. Harris did not caption the filing correctly, it appears to contain new evidence relevant to Ms. Harris's case and, as a result, will not be

stricken. Ms. Sagerholm also makes a variety of other sensational claims about improper and

illegal behavior by Mr. Leopold and his colleagues that are irrelevant to either Ms. Hamner's or

Ms. Harris's claims. They are unfairly prejudicial to parties not involved in either suit.

Accordingly, except for paragraph 21 and the background information in paragraph 1, the motion

to strike will be granted.


A separate Order follows.


3/18/13
Date

/s/
Catherine C. Blake
United States District Judge