**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

JOAN HARRIS                    *

        Plaintiff          *

v.                        *          Case No. CCB 12-829

JOHN R. LEOPOLD, et al.     *

                          *

        Defendants      *

        *    *    *    *    *    *    *

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, Anne Arundel County, Maryland, by and through undersigned counsel, and moves this Honorable Court for summary judgment and, in support, states as follows:

1.  That the Defendant is entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 105 as there is no genuine dispute of material fact as to any remaining count of the Complaint.

2.  That the Defendant respectfully refers the Court to the supporting Memorandum appended hereto.

WHEREFORE, the Defendant respectfully prays that this Honorable Court grants this motion, enters summary judgment as to all remaining counts of the Complaint and for such further relief as the Court may grant in the interest of justice.

Respectfully submitted,


____/s/_____
Jay H. Creech
Senior Assistant County Attorney
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, Maryland 21401
(410) 222-7888
Bar Number 00839
*Attorney for Defendant Anne Arundel County*
*Maryland*


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on this 4th day of March, 2014, service of this motion

required by Fed. R. Civ. P. 5(a) was effective as to all individuals contained on the notice of

electronic filing pursuant to Local Rule 102.1(c).


____/s/_____
Jay H. Creech

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

JOAN HARRIS                                    *

        Plaintiff                         *

v.                                             *                    Case No. CCB 12-829

JOHN R. LEOPOLD, et al.                        *

                                *

        Defendants                        *

        *     *     *     *     *     *     *

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

      The Defendant, by and through undersigned counsel, in support of its Motion for Summary Judgment, states as follows:

### Factual Background

      John Leopold was elected County Executive of Anne Arundel County, Maryland on November 7, 2006.  He was reelected to this position on November 2, 2010.  Mr. Leopold was familiar with Joan Harris prior to his election and sought her advice regarding appointments to various positions when he began to select individuals for his administration.

      Mr. Leopold selected Joan Harris and appointed her as an Executive Management Assistant I with a working title of Constituent Services Specialist on December 5, 2006.  She thereafter left this position on September 7, 2007 and was reappointed to the same position by Mr. Leopold on January 7, 2008.  This was an exempt position the appointment and any promotion or termination was at the discretion of the County Executive.

      As a Constituent Services Specialist, Ms. Harris worked in the Office of the County Executive performing predominately community response and outreach services on behalf of the

County Executive.  These duties included receiving, resolving and responding to inquiries by citizens concerning any issues or interaction about the government services they are seeking or receiving.  She also was tasked at various times with researching issues of community concern and contacting citizens to obtain their understanding and thoughts as to other issues.

Mr. Leopold had almost daily contact with the community services specialists generally and Ms. Harris in particular because she was assigned to community services in the northern section of Anne Arundel County which was of special import to the County Executive.  He frequently tasked her directly to inquire into a citizen complaint or research an issue and reported directly back to Mr. Leopold on these and other issues.  Ms. Harris attended community meetings as a representative of the County Executive and presented certificates or other recognition and extended comments on his behalf.

Ms. Harris participated in Mr. Leopold's campaign for reelection by assisting in the creation of a website for that purpose, contacting individuals to gather support for his election and putting up yard signs for him.

Throughout the summer and fall of 2010, there were numerous occasions when Ms. Harris didn't come into the office and could not easily be reached.  Mr. Leopold expressed concern that he could not count on her to perform her duties.  In this period, other individuals had to be assigned to attend meetings that would have been handled by her because she was unavailable or unreachable.  During this period, she was tasked to by Mr. Leopold to conduct a survey regarding an issue of particular concern in a specific community and failed to do so although she had reported its completion.

In late October of 2010, Mr. Leopold, Denis Callahan, the Chief Administrative Officer, and Erik Robey had a meeting in which Ms. Harris' job performance was discussed.  At that

meeting the County Executive decided not to reappoint Ms. Harris to her position should he be re-elected and Mr. Robey was directed to communicate that decision.

On November 3, 2010, the day after the election, Mr. Robey met Ms. Harris on the street near the Arundel Center, informed her that she was being terminated and provided a letter to that effect.

## **Litigation Background**

On or about February 9, 2011, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunities Commission alleging retaliation by the Defendant for her assistance in the Karla Hamner litigation.  On March 16, 2011, at the request of Ms. Harris, the Commission issued a right to sue letter.  *See* Exhibit 1.

On May 13, 2011, a motion for leave to file a second amended complaint was docketed in *Hamner, et al. v. Leopold, et al.*, CBB 12-829, in which Ms. Harris attempted, for a second time, to join that suit as a plaintiff.[1]  On February 15, 2012, the motion for leave to file this document was denied.

The Plaintiff the filed the instant complaint in United States District Court for the District of Maryland on March 16, 2012.  A motion to dismiss was granted in part with the exception of specific claims relating to the allegation of retaliation under Title VII.  *See* ECF 16 & 17. Discovery has been taken and concluded in this matter.

## **The Summary Judgment Standard**

The Defendant seeks summary judgment with respect to all remaining claims of discrimination. Under Rule 56(a) of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  A fact is "material" if it "might affect

---

[1] Ms. Harris' earlier attempt was denied without prejudice on May 12, 2011.

the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  If "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party," there is a dispute of material fact which will preclude summary judgment. *Id.*

In resolving a summary judgment motion, the court must view all of the facts, including

reasonable inferences to be drawn from them, in the light most favorable to the non-moving

party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also*

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "A party

opposing a properly supported motion for summary judgment 'may not rest upon the mere

allegations or denials of [its] pleadings,' but rather must 'set forth specific facts' "showing that

there is a triable issue." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th

Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  If the non-movant fails to do so, then the

Court has "an affirmative obligation ... to prevent 'factually unsupported claims ...' from

proceeding to trial."  *Felty v. Graves-Humphrey Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)

(emphasis added).

## **Undisputed Facts**

John Leopold was elected County Executive of Anne Arundel County, Maryland on

November 7, 2006.  He was reelected to this position on November 2, 2010.  *See* Exhibit 2

(Affidavit of Robey), p. 1.

Mr. Leopold was familiar with Joan Harris prior to his election and sought her advice

regarding appointments to various positions when he began to select individuals for his

administration.  *See* Exhibit 3 (Deposition of Harris—12/3/2013), p. 16, 66-68;  Exhibit 4

(Deposition of Harris—1/15/2014), pp. 10-11.

Mr. Leopold selected Joan Harris and appointed her as an Executive Management Assistant I with a working title of Constituent Services Specialist on December 5, 2006.  She thereafter left this position on September 7, 2007 and was reappointed to the same position by Mr. Leopold on January 7, 2008.  *See* Exhibit 2, p. 1, Exhibit 3, p. 16;  Exhibit 5 (Affidavit of Burdick), p. 1.

This was an exempt position under the County Code and that appointment and any promotion or termination would be at the discretion of the County Executive.  *See* Exhibit 2, pp. 1-2;  Exhibit 5, p. 1.

As an exempt or "at will" position, there is no requirement that any discharge be for cause.  Frequently, individuals in such a position work closely with the elected official and are terminated at the conclusion of a term or when another person is elected or otherwise becomes the County Executive.  *See* Exhibit 5, p. 2.

Ms. Harris was assigned to community services in the northern section of Anne Arundel County which was of particular import to Mr. Leopold as it was the most populous area of the County and he had represented it previously as a member of the Maryland House of Delegates. *See* Exhibit 2, p. 2;  Exhibit 3, p. 17; Exhibit 4, pp. 12-14.

Mr. Leopold had almost daily contact with the community services specialists generally and Ms. Harris in particular.  *See* Exhibit 2, p. 2;  Exhibit 3, pp. 31-32, 52;  Exhibit 4, pp. 22-23

Mr. Leopold frequently tasked Ms. Harris to inquire into a citizen complaint or research an issue.  She then reported directly back to Mr. Leopold on these and other issues.  *See* Exhibit 2, p. 2;  Exhibit 4, pp. 24.

Ms. Harris also attended community meetings, both as assigned or on her own initiative, as a representative of the County Executive.  It was not infrequently that she attended such

public meetings in the absence of Mr. Leopold and presented certificates or other recognition and extended comments on his behalf. *See* Exhibit 2, p. 2; Exhibit 4, pp. 14-18.

The County Executive relied on Ms. Harris, both to provide advice and to effectively assist the citizens in her position, because of the importance of community services in his administration. He trusted Ms. Harris to properly express the concerns of the citizens and to offer an analysis of the best way to resolve any issues that they may have. *See* Exhibit 2, p. 3; Exhibit 4, pp. 12-13.

Ms. Harris participated in Mr. Leopold's first campaign by displaying a sign on Election Day. *See* Exhibit 3, p. 65-66. In his campaign for reelection she by assisting in the creation of a website for that purpose, contacting individuals to gather support for his election and putting up yard signs for him. *See* Exhibit 3, p. 33-35; Exhibit 4, pp. 8-10

Throughout the summer and fall of 2010, there were numerous occasions when Ms. Harris didn't come into the office and could not easily be reached. Mr. Leopold expressed concern that he could not count on her to perform her duties. *See* Exhibit 2, p. 3.

In this period, other individuals had to be assigned to attend meetings which would have been handled by her because she was unavailable or unreachable. *See* Exhibit 2, p. 3; *See also* Exhibit 3, p. 47-48.

Mr. Leopold tasked Ms. Harris to conduct a survey of citizens in a particular community about an issue and reported back that it had been completed. It was later determined that she had not done the requested survey. *See* Exhibit 2, p. 3; *See also* Exhibit 4, p. 32-34.

In late October of 2010, there was a meeting with Mr. Leopold, Denis Callahan, the Chief Administrative Officer, and Erik Robey were present in which Ms. Harris' job performance was

discussed.  At that meeting the County Executive decided not to reappoint Ms. Harris to her position should he be re-elected.  *See* Exhibit 2, p. 3.

Mr. Robey was directed by Mr. Leopold to inform Ms. Harris of the decision not to reappoint her the day after the election.  *See* Exhibit 2, p. 3.

On November 3, 2010, Mr. Robey met Ms. Harris on the street near the Arundel Center, informed her that she was being terminated and provided a letter of termination.  *See* Exhibit 2, p. 3.

<u>**Argument**</u>

### *I.  The filing of the complaint is untimely*

The sole remaining count alleges that the Plaintiff was retaliated against, in violation of Title VII, for her assistance in the *Hamner* lawsuit.  In the motion to dismiss, the defense raised the issue of timeliness and the Court concluded in its memorandum "[a]ssuming the time the motion to amend was pending tolls the 90-day requirement, Ms. Harris filed her complaint within the statutory limit."  The Defendant respectfully suggests that the existing authorities do not support this assumption.

The Defendant is entitled to summary judgment because any claims under Title VII were untimely because they were not made within the 90-day right to sue period.  42 U.S.C. 2000e-5(f)(1).  The right to sue letter was issued exactly a full year earlier from the filing of the instant complaint on March 16, 2012.  *See* Exhibit 1.  The U.S. Supreme Court has emphasized the importance of strict adherence to filing deadlines in this area:

> [T]his Court has stated that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). In *Mohasco,* the Court rejected arguments that strict adherence to a similar statutory time restriction for filing a charge was 'unfair' or

> that a less literal reading of the Act would adequately effectuate the policy of deferring to state agencies. *Id*. at 824-825, 100 S.Ct. 2486.  Instead the Court noted that "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination."

*National Railroad Passenger Corporation v. Morgan*, 563 U.S. 101, 109, 122 S.Ct. 2061, 2070 (2002).  During this time period, the Plaintiff attempted unsuccessfully to obtain leave to amend the complaint and join the *Hamner* litigation.

The filing of leave to amend has no legal effect unless granted.  *Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998), *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003).  The Fourth Circuit in *Angles v. Dollar Tree Stores, Inc.*, 494 Fed. Appx. 326 (4th Cir. 2012), concluded that an unsuccessful filing of a leave to amend does not toll the 90-day period in which to file a Title VII complaint.  The Court stated succinctly ". . .although the Title VII claims were timely when the Plaintiffs moved for leave to file the amended complaint, the motion for leave was never granted. The amended complaint was thus never filed and lacks the ability to toll the limitations period." *Id*. at 329.  This is consistent with this Court's ruling that the timely filing of a complaint that is dismissed without prejudice does not toll limitations for a subsequently filed complaint.  *Carter v. Montgomery County Rec. Dep't*, 2013 U.S. Dist. LEXIS 180597, 10 (D.C. Md. 2013).

The instant matter is similar to the situation in *Angles*, had the Court granted the motion for leave to file the second amended complaint, the computation would have related back to the filing of the motion.  The denial of Plaintiff's motion means that it and the proposed second amended complaint have no legal effect.  As such, it cannot toll the 90-day period and the complaint in this case, filed exactly one year after the right to sue letter, is untimely and judgment should be granted to the Defendant.

### II. The Plaintiff is not a covered employee under Title VII

The protection of Title VII does not extend to the Plaintiff because she was on the personal staff of an elected official.[2]  The Plaintiff bears the burden of proving that she is an employee and not within an exemption.  *Gupta v. First Judicial Dist.*, 759 F. Supp. 2d 564, 573 (E.D. Pa. 2010).

The Fourth Circuit has stated whether an individual is personal staff is based on "the full scope of the employee's duties, without limiting the inquiry to whether he is a policy maker. . ." and "the examination should focus on whether the employee worked in an intimate and sensitive position of trust, close to the elected official."  *Cromer v. Brown*, 88 F.3d 1315, 1323 (4th Cir. 1996).  Frequently cited is *Teneyuca v. Bexar County*, 767 F.2d 148 (5th Cir. 1985) for the factors to be considered in such an analysis.  As stated there

> These factors include: (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.  This list of factors is not intended to be exhaustive, but it does indicate those factual considerations that courts have found helpful in making this determination. In short, the courts look to the "nature and circumstances of the employment relationship between the complaining individual and the elected official to determine if the exception applies."

---

[2] 42 USCS § 2000e (f) The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, *or any person chosen by such officer to be on such officer's personal staff*, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. (emphasis added).

*Id.* at 151-152 (citations omitted).  Whether the individual has worked on the official's political campaign also should be considered.  *Cromer v. Brown*, 88 F.3d 1315, 1323 (4th Cir. 1996).

It is clear that Mr. Leopold was an elected official with unqualified power to appoint, promote or dismiss an individual in the Plaintiff's position.  Ms. Harris was personally accountable only to the County Executive who was the sole person to evaluate if she was succeeding in that position.

The Plaintiff represented the County Executive in public meetings frequently and made comments and presentations at those gatherings on his behalf.  Mr. Leopold had the ultimate control, and frequently exercised it, to direct Ms. Harris' activities on his behalf.

She worked closely with the County Executive and, although there were times when the Plaintiff reported to Mr. Robey, she continued to receive assignments and report directly back to Mr. Leopold despite this arrangement.  Ms. Harris plainly had an intimate working relations with the County Executive which included contact with him on almost a daily basis in her position.

Further, she was a trusted advisor regarding her contacts with the citizens in her position and Mr. Leopold even sought her advice regarding appointments to various positions when he began to select individuals for his administration.  The Plaintiff assisted in his first campaign by displaying a sign on Election Day.  While a Constituent Services Specialist, Ms. Harris participated in the County Executive's reelection campaign by reserving the website name for him, contacting individuals to gather support for his election and putting up yard signs for him.

For an individual to be personal staff, they are not required to be solely a policy advisor for the elected official.  Judges' secretaries and law clerks have been found to come within the exemption.  *Bland v. New York*, 263 F. Supp. 2d 526 (E.D.N.Y. 2003), *Gupta v. First Judicial Dist.*, 759 F. Supp. 2d 564 (E.D. Pa. 2010).  The Court in *Brewster v. Barnes*, 788 F.2d 985, 990-991 (4th Cir. Va. 1986), suggested that while a deputy sheriff was not personal staff, the personal secretary to an elected official could be.[3]

It is clear that the Plaintiff in her position as a Community Services Specialist was a trusted advisor and the representative of Mr. Leopold at public gatherings.  She worked closely and intimately with the County Executive and was subject to his direct supervision.  Under any measure, she is personal staff to an elected official.  Ms. Harris cannot prove that she is an employee under the protections of Title VII because she falls within the personal staff exemption and, thus, judgment must be granted to the Defendant.

## CONCLUSION

For the foregoing reasons, the County respectfully requests that summary judgment be granted in its favor as to the remaining Count.

---

[3] The Court in *Brewster* did not reach a decision on the personal secretary position because the individual had changed positions and was a deputy sheriff during the period when the alleged discrimination occurred.

Respectfully submitted,


____/s/_____
Jay H. Creech
Senior Assistant County Attorney
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, Maryland 21401
(410) 222-7888
Bar Number 00839
*Attorney for Defendant Anne Arundel County*
*Maryland*