IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOAN HARRIS                             :
                                        :
                                        :
   v.                                   :     Civil No. CCB-12-0829
                                        :
                                        :
ANNE ARUNDEL COUNTY                     :
                                        :

## MEMORANDUM

Plaintiff Joan Harris alleges she was terminated from her position in the Anne Arundel County ("the County") Executive's office in violation of the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 ("Title VII").  Before the court are the County's motion for summary judgment, Ms. Harris's motion to strike an affidavit attached to the motion for summary judgment, and Ms. Harris's motion for sanctions.  The court finds oral argument unnecessary to resolve the issues.  *See* Local R. 105.6 (D. Md. 2011).  For the reasons stated below, the motion for summary judgment will be granted, and the motions to strike and for sanctions will be denied as moot.

## BACKGROUND

John Leopold was twice elected as the County Executive for Anne Arundel County, first in 2006 and again in 2010.  (Def.'s Mot. for Summ. J. Ex. 4, Harris Dep. 8, ECF No. 52-4.) Though Mr. Leopold "pretty much ran" his first campaign by himself, Ms. Harris, who had known Mr. Leopold "for a long time," helped the campaign by standing "with a sign on election day." (Harris Dep. 16, 65, ECF No. 52-3.)  Then, in late November or early December 2006, Mr. Leopold called Ms. Harris on the telephone to ask if she would like to work for him "as a

community services person." (Harris Dep. 16, ECF No. 52-3.)  She accepted the offer.  (*Id.*)

Mr. Leopold had sole discretion concerning appointment, promotion, and termination for Ms. Harris's position as constituent services specialist, a position that fell under the broader heading of "Executive Management Assistant I."  (Burdick Aff. 1, ECF No. 52-5.)  The County Code classified this position as "exempt" or "at will," such that termination need not be for cause.  (*Id.*)  This position appears to have been created and compensated by the County, rather than through any discretionary budget Mr. Leopold may have had.  (*See id.* (quoting County Code provisions concerning appointments by the County Executive).)  Ms. Harris's job duties included addressing constituent issues in the northern part of the County, working with the police and the health department, and working on gang awareness initiatives.  (Harris Dep. 17, ECF No. 52-3.)  She also represented Mr. Leopold at community meetings four to six times per week, and gave speeches on his behalf.  (Harris Dep. 15, 17-18, ECF No. 52-4.)  In addition, Mr. Leopold consulted her between 15 and 30 times for advice about government officials he was considering appointing.  (Harris Dep. 67, ECF No. 52-3; Harris Dep. 10, ECF No. 52-4.)

Mr. Leopold conferred with Ms. Harris several times a week.  (Harris Dep. 22-24, ECF No. 52-4.)  He gave her assignments directly, but also relayed them to her through Erik Robey, Assistant to the Chief Administrative Officer, or through Mr. Leopold's secretary.  (Harris Dep. 22-24, ECF No. 52-4; Robey Aff. 1, ECF No. 52-2.[1])  About a year into Mr. Leopold's first term, a lock was placed on the door of his office suite that prevented others from entering without his permission.  (Harris Dep. 22, ECF No. 52-4.)  Nevertheless, Mr. Leopold continued to speak with Ms. Harris over the phone one to five times per week.  (Harris Dep. 23, ECF No. 52-4.)

---

[1] The court looks to Mr. Robey's affidavit solely for information concerning his job title.

Mr. Leopold announced his candidacy for re-election in June 2010. (Harris Dep. 33, ECF No. 52-3.) To help with this campaign, Ms. Harris set up an email account for Mr. Leopold, registered the domain for a campaign website, and put up campaign signs in the northern area of the County. (Harris Dep. 8-9, ECF No. 52-4.) Around July 2010, however, Mr. Leopold's relationship with Ms. Harris changed, and he stopped speaking to her. (Harris Dep. 33, ECF No. 52-3.) Though Ms. Harris has not provided the court with evidence concerning the source of Mr. Leopold's sudden hostility, in her complaint she alleged it stemmed from assistance she provided in a gender discrimination suit filed by Karla Hamner, a former employee of the County Executive's office. (*See* Compl. ¶¶ 22, 26, 37-41, ECF No. 1.) In Ms. Harris's deposition, however, she stated Mr. Leopold became hostile because of her refusal to contribute $100 to his campaign. (Harris Dep. 35, ECF No. 52-3.) In any event, Ms. Harris began receiving fewer assignments, and was not invited to meetings of the type she had previously attended. (Harris Dep. 48, ECF No. 52-3.) She was terminated on November 3, 2010. (Termination letter, ECF No. 52-2.)

Ms. Harris filed a charge against the County with the Equal Employment Opportunity Commission ("EEOC"), which provided a "Right to Sue" notice in March 2011. (ECF No. 52-1.) On May 13, 2011, Ms. Hamner sought leave to file an amended complaint in her discrimination suit, proposing to add Ms. Harris as a co-plaintiff. (Mot. for Leave to File Second Am. Compl., *Hamner v. Anne Arundel Cnty.*, CCB-10-2485, ECF No. 40 (D. Md. May 13, 2011).) The court denied that motion on February 15, 2012, because Ms. Harris's claims did not have a sufficient relationship to Ms. Hamner's. (*Hamner v. Anne Arundel Cnty.*, CCB-10-2485, ECF No. 53 (D. Md. Feb. 15, 2012).) Ms. Harris then filed a complaint in this court on March

16, 2012, naming both the County and Mr. Leopold as defendants.

On March 18, 2013, the court granted in part and denied in part the defendants' motion to dismiss. The court dismissed Count Three's First Amendment claim and Count Four's claim under 42 U.S.C. § 1985 – both of which named the County and Mr. Leopold as defendants – for failure to state a claim. The court also dismissed Count One, which named only the County as defendant, for the same reason. The court denied the motion, however, as to Ms. Harris's Title VII retaliation claim against the County, leaving the County as the sole remaining defendant.

On March 2, 2014, the County filed a motion for summary judgment with five attached exhibits. On March 25, 2014, Ms. Harris moved to strike the affidavit of Erik Robey, which composed a portion of the motion's second exhibit. Also on March 25, 2014, Ms. Harris moved for discovery sanctions against the County, arguing that it had improperly delayed producing its reasons for her termination, and filed an opposition to the motion for summary judgment.

## ANALYSIS

I. **Motion for Summary Judgment**

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. "A party opposing a properly supported motion for summary judgment 'may not rest

4

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (en banc).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

**Whether Ms. Harris is Covered by Title VII**

Ms. Harris's only remaining claim is that she was retaliated against in violation of Title VII.  Title VII's anti-retaliation provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a). Ms. Harris alleges "she was terminated as a direct result of providing information and evidence [concerning] a fellow employee who was [pursuing] claims of discrimination" under Title VII.  (Compl. ¶ 41.)

The County argues Ms. Harris is not covered by Title VII's protections because she was part of Mr. Leopold's "personal staff."  Title VII defines "employee" as "an individual employed by an employer," but excludes "any person elected to public office in any State or political subdivision of any State . . . or any person chosen by such officer to be on such officer's personal

5

staff . . . ." 42 U.S.C. § 2000e(f). "[E]mployee status is an element of a substantive Title VII claim," *Curl v. Reavis*, 740 F.2d 1323, 1327 n.2 (4th Cir. 1984), and the court construes the facts concerning Ms. Harris's position in the light most favorable to her, *Cromer v. Brown*, 88 F.3d 1315, 1318 (4th Cir. 1996).[2]

"The reach of Title VII's personal staff exclusion is a question of federal, not state, law." *Cromer*, 88 F.3d at 1322. "State law is only relevant 'insofar as it describes the plaintiff's position, including [her] duties and the way [she] is hired, supervised and fired.'" *Curl*, 740 F.2d at 1327 (citation omitted). The Fourth Circuit has "emphasized that the 'personal staff' exemption is to be narrowly construed." *Cromer*, 88 F.3d at 1323. In determining whether a plaintiff employee falls into the exemption, a court must engage in a "fact-specific examination of the employee's role," focusing on the central issue of "whether the employee worked in an intimate and sensitive position of trust, close to the elected official." *Id.*

*Cromer* provided the following non-exhaustive list of factors to consider in making this determination: (1) whether promotion of the employee depended solely on the elected official; (2) whether the employee occupied a position high in the chain of command; (3) whether the employee had a highly intimate working relationship with the elected official; (4) whether the employee contributed to the making of policy decisions in the elected office; (5) whether the

---

[2] Ms. Harris argues that the County waived this issue by not raising it earlier. But the County raised the issue in its answer, stating as an affirmative defense that "Plaintiff's employment was not within the coverage of Title VII," and that "Plaintiff served as an exempt at will employee . . . ." (Answer 5, ECF No. 24.) Even if the County had not done so, however, a plaintiff's failure to qualify as an "employee" need not be raised as an affirmative defense. In *Curl*, the defendants first presented this issue in a motion to dismiss on the second day of trial. *Curl*, 740 F.2d at 1327 n.2. The court rejected the plaintiff's argument that the issue was untimely raised, on the ground that employee status is an element of a substantive Title VII claim. *Id.* Ms. Harris's argument that the County waived the issue is therefore unavailing.

employee's position was created and compensated by the county pursuant to state law;[3] (6) whether the full scope of the employee's duties, without regard to whether the employee is a policy maker, suggests the employee was part of the official's personal staff; (7) whether the employee worked in the official's political campaign; and (8) whether the employee worked under the direction of the official or someone else. *Id.* After applying these factors, the court held that an individual who served as both captain and lieutenant in a sheriff's office was part of the sheriff's personal staff when serving as captain, but not when serving as lieutenant. *Id.* at 1322-24. *See also Brewster v. Barnes*, 788 F.2d 985, 990-91 (4th Cir. 1986) (holding that a deputy sheriff who did not have a "close working relationship" with the sheriff was not part of his personal staff); *Curl*, 740 F.2d at 1327-28 (holding that a deputy sheriff was not part of the sheriff's personal staff because she did not work under his personal direction, did not occupy a position high in the chain of command, and had primarily clerical and secretarial duties).

The court turns now to the evidence before it concerning Ms. Harris's position.[4] First, appointment, promotion, and termination for Ms. Harris's position as constituent services specialist, a job categorized as "Executive Management Assistant I," were at Mr. Leopold's discretion. (Burdick Aff. 1, ECF No. 52-5.) Second, Mr. Leopold personally conferred with Ms. Harris several times a week. (Harris Dep. 22-24, ECF No. 52-4.) He gave her assignments directly, but also relayed them to her through Mr. Robey or Mr. Leopold's secretary. (*Id.*) Though Mr. Leopold placed a lock on his office in 2007 that prevented others from entering

---

[3] "This can be relevant because when a position is created and compensated under state law, the elected official (the employer) is not required to allocate funds from his discretionary budget to pay the employee's salary." *Cromer*, 88 F.3d at 1323 n.5.

[4] Despite the impassioned tone of her memorandum, Ms. Harris has chosen not to submit any evidence – deposition testimony, affidavits, or otherwise – to support her opposition to the County's motion for summary judgment. Rather, she makes two references to portions of her deposition testimony submitted by the County, and cites the affidavit of Mr. Robey, which she also moved to strike. The court is therefore forced to look only to the evidence submitted by the County in resolving the motion for summary judgment.

without his permission, he continued to speak with Ms. Harris frequently over the phone. (*Id*.) Ms. Harris therefore appears to have occupied a position relatively high in the chain of command. Third, Ms. Harris's testimony suggests she had a highly intimate working relationship with Mr. Leopold: he consulted her between 15 and 30 times for advice concerning appointments of government officials (Harris Dep. 67, ECF No. 52-3; Harris Dep. 10, ECF No. 52-4); she represented him at community meetings four to six times per week, and gave speeches on his behalf (Harris Dep. 15, 17-18, ECF No. 52-4); and he asked her to speak to constituents on his behalf when those constituents had an issue, and to try to resolve that issue (Harris Dep. 12, ECF No. 52-4). Fourth, Ms. Harris does not appear to have played a major role in Mr. Leopold's policy decisions other than by providing advice on appointments. (Harris Dep. 11, ECF No. 52-4.) Fifth, sections of the County Code provided by the County suggest Ms. Harris's position was created and compensated by the County, rather than through any discretionary budget Mr. Leopold may have had. (*See* Burdick Aff., ECF No. 52-5.) Sixth, the full scope of Ms. Harris's duties suggest she was part of Mr. Leopold's personal staff: he hired her, (Harris Dep. 16, ECF No. 52-3), frequently spoke with and met with her, (Harris Dep. 22-24, ECF No. 52-4), gave her assignments, (*id.*), asked her for advice on appointments of government officials, (Harris Dep. 67, ECF No. 52-3; Harris Dep. 10, ECF No. 52-4), and regularly sent her to speak as his representative at community events, (Harris Dep. 15, 17-18, ECF No. 52-4). Seventh, Ms. Harris worked, to varying degrees, on both Mr. Leopold's 2006 and 2010 campaigns. For the 2006 campaign she "stood with a sign on election day," (Harris Dep. 65, ECF No. 52-3), and for the 2010 campaign she set up an email account for Mr. Leopold, registered the domain for a campaign website, and put up campaign signs in the northern area of the County, (Harris Dep. 8-

9, ECF No. 52-4).  Finally, though Mr. Leopold sometimes relayed his assignments to Ms. Harris through Mr. Robey or his secretary, (Harris Dep. 22-24, ECF No. 52-4), the frequency and content of Mr. Leopold's communication with Ms. Harris suggest she worked under Mr. Leopold's direction.

Bearing in mind the central issue of whether Ms. Harris "worked in an intimate and sensitive position of trust, close to" Mr. Leopold, *Cromer*, 88 F.3d at 1323, the court concludes, after weighing the above factors, that her personal selection by Mr. Leopold, involvement with Mr. Leopold's campaigns, frequent contact with Mr. Leopold, frequent appearances at public events at which she represented Mr. Leopold, and consultation on appointments establish as a matter of law that Ms. Harris was part of Mr. Leopold's personal staff.  A Title VII remedy is thus unavailable in this case.[5]  Accordingly, the court will grant the County's motion for summary judgment.[6]

## II.     Ms. Harris's Motion to Strike Mr. Robey's Affidavit, and for Sanctions

---

[5] Federal law does not leave the "personal staff" of elected officials without a remedy for workplace discrimination that would otherwise be actionable under Title VII.  The Government Employee Rights Act ("GERA"), 42 U.S.C. §§ 2000e-16a, 2000e-16b, and 2000e-16c, "originally adopted as Title III of the Civil Rights Act of 1991, provides protection for those excluded from the definition of 'employee'." *Brazoria Cnty., Tex. v. EEOC*, 391 F.3d 685, 689 (5th Cir. 2004).  GERA's prohibition of discriminatory practices does not expressly include an anti-retaliation provision.  *See* 42 U.S.C. § 2000e-16b(a).  The EEOC, however, has interpreted the statute to include claims by individuals retaliated against for exercising their rights under federal laws protecting equal employment opportunity.  *See* 29 C.F.R. § 1603.102(a) (GERA-protected employees "who believe they have been . . . retaliated against for opposing any practice made unlawful by federal laws protecting equal employment opportunity or for participating in any stage of administrative or judicial proceedings under federal laws protecting equal employment opportunity may file a complaint [with the EEOC] not later than 180 days after the occurrence of the alleged discrimination").  *See also Bd. of Cnty. Comm'rs, Fremont Cnty., Colo. v. EEOC*, 405 F.3d 840, 843-50 (10th Cir. 2005) (upholding the EEOC's interpretation of GERA to encompass anti-retaliation claims); *Brazoria Cnty.*, 391 F.3d at 690-91 (holding GERA "provides a claim for retaliation" even without the EEOC's regulation).

To the extent Ms. Harris relies on the court's statement in Ms. Hamner's case that Ms. Hamner fell within Title VII coverage, that argument misses the mark.  The court reached that conclusion on a motion to dismiss under Federal Rule of Civil 12(b)(6), and therefore looked only to allegations in the complaint.  *See Hamner v. Anne Arundel Cnty.*, CCB-10-2485, ECF No. 38 (D. Md. May 12, 2011) ("Based on the allegations in the complaint, Ms. Hamner does not appear to fit the definition of 'personal staff' that would exclude her from Title VII coverage.").  Here, by contrast, Ms. Harris is confronted with a motion for summary judgment, and the court must look to evidence rather than allegations.

[6] Because the court grants summary judgment on these grounds, it does not address the County's argument that Ms. Harris was time-barred from suing under Title VII.

Ms. Harris has moved to strike Mr. Robey's affidavit from the County's motion for summary judgment. The court has not relied on Mr. Robey's affidavit except for information as to his job title, and the motion to strike will therefore be denied as moot.

Ms. Harris has also moved for sanctions based on the County's alleged discovery violations. Ms. Harris argues that a number of sanctions – ranging up to a default judgment in her favor – are warranted because of the County's alleged delay in producing information concerning its reasons for Ms. Harris's termination. This information is unrelated to the dispositive issue in this case: whether Ms. Harris falls within Title VII's exclusion of the personal staff of elected officials. The motion for sanctions will therefore also be denied as moot.

## CONCLUSION

For the reasons stated above, the County's motion for summary judgment will be granted, and Ms. Harris's motion to strike Mr. Robey's affidavit and motion for sanctions will both be denied as moot.

A separate order follows.


October 1, 2014                                              /s/
Date                                                         Catherine C. Blake
                                                             United States District Judge